## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| TODD C. BANK, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br> vs.<br><br>ALLEGIANCE ADMINISTRATORS, LLC, an Ohio limited liability company, and NATIONAL ADMINISTRATIVE SOLUTIONS CORP., an Ohio corporation,<br><br>       Defendants. | Case No. 1:16-cv-02642-CBA-VMS<br><br>Hon. Carol Bagley Amon |

### DEFENDANTS ALLEGIANCE ADMINISTRATORS, LLC'S AND NATIONAL ADMINISTRATIVE SOLUTIONS CORP.'S MOTION FOR SUMMARY JUDGMENT

Christopher W. Tackett, Esq. (OH Bar. #0087776)(admitted PHV)
**Nardone Limited**
300 East Broad Street, Suite 490
Columbus, Ohio 43215
Telephone: (614) 223-0123
Fax: (614) 223-0115
Email: ctackett@nardonelimited.com

00351099.1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................ 1

II.  STATEMENT OF THE CASE ..................................................................... 3

    A.   Undisputed Facts ............................................................................... 3

    B.   Procedural History ............................................................................ 5

III. APPLICABLE LEGAL STANDARD ........................................................... 8

IV.  LAW AND ARGUMENT ............................................................................ 10

    A.   Bank Lacks Standing Because a Telephone Line Used for Business Purposes and Held Out to the Public as a Business Number is Not "Residential" under the TCPA ...................................................... 10

        1.   Introduction ............................................................................ 10

        2.   The TCPA Does Not Prohibit Prerecorded Calls to Business Telephone Lines ...................................................... 10

        3.   Bank's Suggested Bright-Line Rule for Determining the Residential Nature of a Telephone Line Would be Contrary to Congressional Intent and Impractical to Implement ........................ 15

        4.   Home Business Telephone Lines Are Not Included in the Meaning of "Residential Telephone Line" under the TCPA, so it Was Not Necessary to Exclude Home Business Lines ....................... 17

    B.   Allegiance's Intent is Irrelevant to Determining Whether Bank's Telephone Line is Residential under the TCPA ............................................ 17

    C.   The Court Lacks Jurisdiction over Bank's State Law Claim ...................... 19

    D.   Policy Considerations Counsel Against Bank's Proposed Attempt to Rewrite the TCPA, and Courts have Ruled that Professional TCPA Claimants, Such as Bank, Do Not Suffer a Harm Necessary for Standing under the TCPA ............................................................... 21

V.   CONCLUSION ........................................................................................ 23

# TABLE OF AUTHORITIES

**Case Law**             **Page**

*Adamo v. AT&T*, 2001 WL 1382757, at *2 (Ohio App. 8th Dist. 2001) ......................... 21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986),
aff'd, 235 Fed.Appx. 827 (2d Cir. 2007) ....................................................... 8

*Ari Weitzner, M.D., P.C. v. Sciton, Inc.*, 2007 WL 2891521 (Sept. 28, 2007) ................ 22

*Bank v. Alliance Health Networks, LLC*, No. 15 Civ. 00213 (E.D.N.Y. Oct. 10, 2015).. 22

*Bank v. Caribbean Cruise Line, Inc.*, No. 11-2744, 2013 WL, 4458742,
at *4 (E.D.N.Y. Aug. 15, 2013) aff'd, 606 Fed. Appx. 30 (2d Cir. 2015) ........................ 6, 22

*Bank v. Corps. for Character, L.C.*, No. 14 Civ. 04795 (E.D.N.Y.) ................................. 22

*Bank v. Independence Energy Group LLC*, 12-cv-01369, 2015 WL 4488070
(E.D.N.Y. July 23, 2015) ........................................................................... 6, 10,
                                                                                  11, 12

*Bank v. J. D. W. & Assocs., LLC*, No. 15 Civ. 01835 (E.D.N.Y.) ................................... 22

*Bank v. Lifewatch Inc.*, No. 15- Civ. 02278 (E.D.N.Y.)..................................................... 22

*Bank v. Philips Electronics North America Corp.*, No. 14 Civ. 05312 (E.D.N.Y.) ......... 22

*Bank v. Spark Energy Holdings*, LLC, No. 13 Civ. 06130 (E.D.N.Y.)............................. 22

*Bank v. Uber Techs., Inc.*, No. 15-4858 (E.D.N.Y. Mar. 8, 2016) ................................. 20, 22

*Bonime v. Avaya, Inc.*, 2006 WL 3751219 (Dec. 20, 2006) ............................................. 22

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 108 S. Ct. 614 (1988).................... 19

*Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423,428 (2d Cir. 2001)..........................9

*Giovanniello v. ALM Media, LLC*, 2010 WL 3528649 (Sept. 3, 2010) ........................... 22

*Gratt v. Etour & Travel, Inc.*, 347 Fed.Appx. 707 (2d Cir.2009) .................................... 22

*Holster v. BNA Subsidiaries, LLC*, 2010 WL 902699, *1 (Mar. 9, 2010). ...................... 22

*Holster v. Gatco, Inc.*, 485 F.Supp.2d 179 (E.D.N.Y.2007)............................................. 22

*In re Caldor Corp.*, 303 F.3d 161, 168 (2d Cir.2002) ...................................................... 10

*Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F. 3d 255, 262 (2d Cir. 2006) ............... 19

## TABLE OF AUTHORITIES

(continued)

**Page**

*Kolari v. New York-Presbyterian Hospital*, 455 F.3d 118 (2nd Cir. 2006) ..................... 19, 20

*Leyse v. Clear Channel Broadcasting, Inc.*, 301 Fed.Appx. 20 (2d Cir.2008) ............... 22

*Leyse v. Lifetime Entertainment Services, LLC*, 171 F.Supp.3d 153 (S.D.N.Y.2016) .... 22

*Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n, Inc.*,
965 F.2d 1224, 1237 (2d Cir. 1992) ................................................................................. 10

*Margulis v. Fairfield Resorts, Inc.*, No. 03AC-008703,
2004 WL 5400462 (Mo. Cir. Ct., Aug. 3, 2004) ............................................................. 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986) ............................................................ 9

*McCabe v. Caribbean Cruise Line, Inc.*, 2014 WL 3014874 (July 3, 2014) .................... 22

*Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 745 (2012) ......................................... 10

*MSF Holding Ltd. v. Fiduciary Trust Co. Int'l.*, 435 F. Supp. 2d 285,
65 Fed.R.Serv.3d 276 (S.D.N.Y. 2006) ........................................................................... 8

*Primavera v. Drexen*, No. 080922890, 2009 WL 3554582
(Utah Dist.Ct. Oct. 26, 2009) ......................................................................................... 21

*Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ...................................................... 10, 21

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
7 FCC Rcd. 8752, 8756 n.7 (Oct. 16, 1992) ................................................................... 11, 14,
15

*Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016), as revised (May 24, 2016)* ... 21

*Stoops v. Wells Fargo Bank, N.A.*, 15-83, 2016 WL 3566266,
at *9 (W.D.P.A. June 24, 2016) ....................................................................................... 21, 22

*Tucker v. Banknorth, NA*, 333 F. Supp.2d 50, 55-56 (E.D.N.Y. 2004) .................... 9

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) .................................. 19

*United States v. Seinfeld*, 632 F. Supp. 622, 626 (E.D.N.Y.1986) ................................. 11

*Vincent v. C.O.M. House*, No. 07CV632A, 2009 U.S. Dist. LEXIS 80776,

## TABLE OF AUTHORITIES

### (continued)

**Page**

8 (W.D.N.Y. Sept. 4, 2009) ................................................................ 13

*Weitzner v. Cynosure, Inc.*, 2014 WL 508237 (Feb. 6, 2014)........................................... 22

*Weitzner v. Iridex Corp.*, 2006 WL 1851441 (June 29, 2006) ......................................... 22

*Weitzner v. Sanofi Pasteur, Inc.*, 7 F.Supp.3d 460 (M.D.Pa.2014),
*aff'd*, 819 F.3d 61 (3d Cir. 2016) ................................................................ 22

*West v. Moe's Franchisor, LLC*, No. 15-2846, 2015 WL 8484567,
at *4 (S.D.N.Y. Dec. 9, 2015)................................................................ 19

*Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) ............. 9

### Regulations and Statutes

Fed.R.Civ.P. 12(b)(6) ................................................................ 5

Fed.R.Civ.P. 56(a) ................................................................ 8

Internal Revenue Code §162................................................................ 4

Mo. Rev. Stat. 407.1095(2)................................................................ 16

Telephone Consumer Protection Act, 47 U.S.C. §227 .................................................... passim

28 U.S.C. §1332(d)(2) ................................................................ 20

28 U.S.C. § 1367(c) ................................................................ 19

47 C.F.R. § 64.1200(a)(2)................................................................ 10

*2005 Rule*, 70 Fed.Reg. 331................................................................ 17

### Miscellaneous

137 Cong.Rec. S16204-01 (Nov. 7, 1991) ........................................................ 11

S. Rep. No. 102-178, at 1-2 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968 ..................... 15

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD C. BANK, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>   vs.<br><br>ALLEGIANCE ADMINISTRATORS, LLC, an Ohio limited liability company, and NATIONAL ADMINISTRATIVE SOLUTIONS CORP., an Ohio corporation,<br><br>                Defendants. | Case No. 1:16-cv-02642-CBA-VMS<br><br>Hon. Carol Bagley Amon |

## DEFENDANTS ALLEGIANCE ADMINISTRATORS, LLC'S AND NATIONAL ADMINISTRATIVE SOLUTIONS CORP.'S MOTION FOR SUMMARY JUDGMENT

Defendant Allegiance Administrators, LLC ("**Allegiance**") and Defendant National Administrative Solutions Corp. ("**National**") (collectively referred to as "**Allegiance**") respectfully present this Motion for Summary Judgment on Plaintiff Todd C. Bank's ("**Bank**") Complaint in the above-referenced case.

## I.    Introduction.

The issue in this case is whether a telephone line should be considered "residential" under the Telephone Consumer Protection Act, 47 U.S.C. §227 (the "**TCPA**") when the telephone line is used to conduct a law practice and the number is undisputedly held out to the public as being a business telephone number. To have standing under the TCPA to assert Bank's claims, Bank must have received the call on a residential telephone line. In this case, Bank's claims arise primarily out of the TCPA and involve Bank receiving a telephone marketing call from a third-party, which featured a prerecorded voice. Allegiance did not authorize or approve the call alleged in the Complaint, and the call violated Allegiance's express policies and procedures. Bank received the call on the telephone line

from which Bank conducts his law practice business, (718) 520-7125 (the "**Telephone Number**"). The TCPA only bars prerecorded calls to residential telephone lines. But, **Bank** held out the Telephone Number to the public in many ways as being Bank's business telephone number—which Bank does not contest. And, Bank also admits that Bank used the Telephone Number to conduct and carryout Bank's law practice business.

As a result of the above uncontested facts, Bank's Telephone Number is not a "residential telephone line" under the TCPA.[1] See, 47 U.S.C. §227. Therefore, Bank has no standing to sue under the TCPA's rules against certain calls being made to Residential Telephone Lines. The term Residential Telephone Line is not specifically defined in the TCPA or the TCPA's enacting regulations. But, the plain meaning of a residential telephone excludes business telephone lines. To be clear, business lines are not at all addressed by the TCPA section under which Bank brings his claims in this case. Further, the TCPA's statutory structure and legislative history also make clear that the term "residential" is meant to directly contrast with the statute's treatment of businesses, as business telephone lines are generally outside the scope of the TCPA as a whole. After all, the statute under which Bank seeks relief is the Telephone Consumer Protection Act—not the businesses conducted from home act.

In pursuing the claims at issue in this case, Bank has proposed to improperly expand the TCPA by inventing a new subjective bright-line test. Bank's proposed bright-line test would require courts to investigate the mental state and knowledge of the caller— even when a plaintiff, such as Bank, was called on a business number that would preclude standing under the TCPA. To be clear, the test that Bank suggests is not provided for or supported by applicable law. But, worse yet, Bank's proposed TCPA expansion would easily allow individuals like Bank to register a telephone line with the service provider as

---

[1] The term "**Residential Telephone Lines**," refers to the term as it is used in the TCPA.

"residential," while holding the number out to the public as a business number, in the hope of receiving an autodialed or prerecorded call, leading to a cause of action under the TCPA. Bank has suggested that Allegiance should be required to prove how the third-party caller obtained Bank's Telephone Number; however, the TCPA and the relevant case law do not contemplate or require proof of the caller's intent or knowledge. There is no basis to write Bank's additional requirement into the TCPA. Further, Bank's proposed test has no bearing on Allegiance's right to summary judgment on Bank's claims based on Bank's lack of standing under the TCPA.

## II.   Statement of the Case.

### A. Undisputed Facts.

Plaintiff Bank is an attorney acting *pro se* in this case. (Dkt. 1, ¶4-6); Declaration of C.Tackett, Ex. C, Bank's Admission Response No. 3). As detailed in Allegiance's incorporated Rule 56.1 Statement of Undisputed Material Facts, there is no dispute that Bank uses the Telephone Number to conduct Bank's law practice business. *See* Allegiance's Loc.R.56.1 Stmt. of Mtrl. Facts, filed contemporaneously and incorporated by reference in this Motion. There is also no dispute that Bank publicly holds out the Telephone Number as the telephone number for Bank's law practice. Bank openly admits that Bank lists the Telephone Number as the business telephone line for Bank's law practice, which primarily focuses on filing claims under what Bank calls the "annoyance laws," including the TCPA. *See,* attached Declaration of C.Tackett, Ex. C Bank's Admissions Nos. 1, 3, 4, Ex. G, Bank's business letterhead, Ex. I, Bank's website.

Bank has admitted to holding out the Telephone Number to the public as Bank's business number in at least six different ways:

(1) in pleadings and court filings (*see, e.g.*, Complaint (Dkt.1));

00352577.1

(2) on Bank's letterhead and professional correspondence that Bank generates in connection with Bank's law practice *(Declaration of C.Tackett*, Ex. C, Response Nos. 1, 3, 4, Ex. G, Bank's business letterhead);

(3) on Plaintiff's Bank's business cards *(id.,* Ex. C, Response No. 2; Ex., F, Bank's business card);

(4) to clients, prospective clients, other attorneys, other businesses, and business contacts *(id.,* Ex. I, Bank's website);

(5) on **Bank's attorney registration with the New York State Bar** *(id.* **Ex. C, Response No. 7, Ex. L, Bank's N.Y. bar reg., listing the Telephone Number as Bank's law practice contact.**); and,

(6) in directories and listings *(id.* Ex. C, Response No. 8, Exs. M, N, private directory listings for Bank's practice that feature the Telephone Number).

Further confirming what Plaintiff told the public—that the Telephone Number was a business telephone number—Plaintiff also told the federal government the same thing. Specially, Bank has claimed a business expense deduction for the Telephone Number on each of Bank's tax returns that Bank provided in discovery. *Id.,* Ex. C, Admission Response No. 6, Ex. J, excerpt from the 2012 Form 1120S U.S. Income Tax Return for an S Corporation for Bank's law practice, and Schedule C of Bank's 2013 and 2015 Form 1040 U.S. Individual Income tax returns.[2] In claiming the 2013 and 2015 deductions for Bank's business use of the Telephone Number, Bank certified under penalty of perjury that the

---

[2] To clarify, sometime after the 2012 tax year Bank reorganized his law practice's business structure from being incorporated and taxed as an S-Corporation to being sole proprietorship filing its business income under Schedule C of Bank's personal Form 1040 tax return. See, Decl., Ex. K. Thus, each of the three enclosed tax returns excerpts further evidence Bank's admission that Bank claimed, or approved, business expense deductions for use of the Telephone Line to operate Bank's law practice.

cost of the Telephone Number was an ordinary and necessary business expense under Internal Revenue Code §162.[3]

Finally, Plaintiff Bank's business address and the Telephone Number are also listed on Avvo, a directory of attorneys *(id.,* Ex. M), and on JunkFax, a directory of attorneys who handle lawsuits against businesses that send junk faxes. *Id.,* Ex. N. In sum, there is no dispute that the Telephone Number is held out to the public in numerous ways as being a business number for Bank's law practice, and there is no dispute that Bank uses the **Telephone Number to conduct Bank's law practice. In sum, there is no dispute that Bank is in the business of operating a law practice, that Bank uses the Telephone Number as the** law practice's telephone number, and that Bank holds the Telephone Number out to the public as his law practice's telephone number.

The only relevant issue in dispute is the legal question of whether the Telephone Number should be considered "residential" under the TCPA when Bank uses the Telephone Number to to conduct Bank's law practice and the Telephone Number is undisputedly held out to the public as a business number.

### B. Procedural History.

On May 24, 2016, Plaintiff Bank filed the Complaint in this action asserting a claim on behalf of himself and alleged class members arising from a single prerecorded message that Bank received on May 5, 2016 in violation of the TCPA. (Tackett Decl., Ex. A, Bank's Complaint (Dkt. 1), ¶¶8, 13-15). In the Complaint, Bank seeks: (i) a total of $1,500.00 (treble the statutory damages amount of $500.00) for himself and for each class member who allegedly received an unauthorized prerecorded message; (ii) an order enjoining

---

[3] With regarding to Bank's 2012 Form 1120S U.S. Income Tax Return for an S Corporation, there is a minor distinction that Bank did not claim the expense himself. Rather, on the 2012 Form 1120S, Bank caused his law practice to claim a business expense deduction, claiming under penalty of perjury that costs for using the Telephone Number were ordinary and reasonable business expenses of Bank's law practice.

Allegiance from violating the TCPA in the future; and, (iii) Plaintiff's costs and disbursements, including reasonable attorneys' fees. *Id.,* **Prayer for Relief.**

On August 12, 2016, Allegiance moved to dismiss Plaintiff Bank's Complaint under Fed.R.Civ.P. 12(b)(6) on the ground that Bank held out the Telephone Number to the public as Bank's business telephone number. Therefore, Allegiance moved to dismiss because Bank's Telephone Number does not qualify as a "residential telephone line" under the TCPA, which precludes Bank from having standing to assert a TCPA claim. *See,* (Dkt. 37). **Further, Allegiance moved to dismiss based on collateral estoppel, because a recent ruling from this Court held that Bank's same Telephone Number was held out to the public as a** business number, and precluded Bank from having standing to assert a TCPA claim. See, *id.; Bank v. Independence Energy Group LLC,* No. 12-cv-01369, 2015 WL 4488070 (E.D.N.Y. July 23, 2015), enclosed as Ex. O to C.Tackett Decl. Allegiance also moved to Strike Bank's class allegations, because Bank does not assert a class that may be certified because of Bank's financial conflict of interest with the class, as well as Bank's lack of standing. *See,* (Dkt.37, p.24 of 40).

On November 29, 2016, the Court entered a Minute Order, ordering Plaintiff Bank to provide supplemental briefing to respond to the Defendants' arguments in support of the Defendants' August 12, 2016, Motion to Strike Bank's class allegations. *See, id.* The Court specifically ordered Bank to respond to Allegiance's argument that Bank's class allegations should be struck, because Plaintiff Bank may attempt to serve as class counsel for purposes of the certification motion, and had done so in the past. *See, id., citing Bank v. Caribbean Cruise Line, Inc.,* No. 11-2744, 2013 WL, 4458742, at *4 (E.D.N.Y. Aug. 15, 2013), where Bank filed a class certification motion in *Caribbean Cruise Line I* in which Bank sought to have himself appointed as class counsel. On December 16, 2016, Bank provided a

00352577.1

supplemental memorandum regarding Allegiance's Motion to Strike. *See*, (Dkt. 45). In Bank's supplemental memorandum, Bank argued that he was legally permitted to serve as interim counsel to seek class certification, but stated that he did not intend to do so. *Id*. Then on January 6, 2017, Allegiance submitted its Reply to Bank's supplemental memorandum regarding the Motion to Strike, further arguing that Bank's dual status as class counsel and class representative precludes Bank from asserting a class that may be certified. (Dkt. 51).

After the parties concluded briefing on Allegiance's Motion to Dismiss, Strike, or Stay, the parties proceeded to conduct limited discovery solely on the issue of the residential versus commercial nature of Bank's Telephone Number, as provided under the Court's August 5, 2016 Conference Order. *See*, (Dkt. 36). During the course of limited discovery, Bank refused to provide any records for the Telephone Number despite extended meet-and-conferral on the issue. *See*, (Dkt. 61). Ultimately the parties submitted letters to the Court about whether Bank's use of the Telephone Number was relevant to whether Bank has standing under the TCPA. *See*, (Dkt. 67, 68) (the "**Relevance Letters**"). Both parties agreed in the Relevance Letters that Bank's call-by-call use of the Telephone Number does not determine whether Bank has standing to bring a TCPA claim relating to the Telephone Number. *Id*.

The Court then scheduled an in-person conference on February 14, 2017, to address whether Bank's use of the Telephone Number was relevant to the operative question of the business versus residential nature of the Telephone Line, which determines if Bank has TCPA standing. *See,* (Dkt. 69). During the February 14, 2017, conference about the Relevance Letters, Magistrate Judge Scanlon agreed that Bank's itemized telephone records were not relevant to deciding whether Bank's Telephone Number was a business

telephone number. *See*, Conference Order, (Dkt.70). Then, on February 15, Magistrate Judge Scanlon entered a Conference Order ruling that Bank's itemized use of the Telephone Number was not relevant to whether the Telephone Number was a business number under the TCPA. *See, id.* The February 15 Conference Order also provided that limited discovery was closed through the February 15, 2017 Conference Order, and set a deadline for Allegiance to write to the District Judge regarding summary judgment based on Bank's Telephone Number being a business line. *Id.*

On February 22, 2017, District Judge Amon entered a Scheduling Order, setting a February 27 telephone conference to address Allegiance's potential summary judgment motion and pending motion to dismiss. *See*, Feb. 22, Scheduling Order. During the February 27, 2017 telephone conference, Allegiance explained that we believe that the Motion to Dismiss states valid grounds for dismissal, and that the limited discovery conducted has provided further evidence confirming that Bank holds the Telephone Number out to the public as a business line. Allegiance orally requested leave of Court to move for summary judgment based on the limited discovery, and the Court granted leave through a subsequent Minute Entry. *See*, Feb. 27, Minute Entry.

After obtaining evidence establishing that Bank held the Telephone Number out to the public as Bank's business telephone line, Allegiance now presents this Motion for Summary Judgment, because Bank lacks standing under the TCPA. This Motion for Summary judgment incorporates by reference all prior arguments from Allegiance's Motion to Dismiss, Strike, or Stay. *See*, (Dkt. 37), and Allegiance's Reply in Support of the Motion to Dismiss Strike or Stay (Dkt. 38), as well as Allegiance's Supplemental Reply (Dkt. 51).

## III.   **Applicable Legal Standard.**

Under the Federal Rules of Civil Procedure, summary judgment is warranted when the moving party "shows that there is no genuine dispute as to any material fact

00352577.1

and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Only disputes over material facts will properly prevent a court from entering summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Whether a fact in a given case is material is determined by looking at the applicable substantive law." *MSF Holding Ltd. v. Fiduciary Trust Co. Int'l.,* 435 F. Supp. 2d 285, 292 (S.D.N.Y. 2006), aff'd, 235 Fed.Appx. 827 (2d Cir. 2007); see also *Anderson,* 477 U.S. at 248 (a fact is material if it "might affect the outcome of the suit under the governing law * * * Factual disputes that are irrelevant or unnecessary will not be counted").

"The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986). And, the non-movant "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423,428 (2d Cir. 2001) (internal quotation marks omitted). Furthermore, "[t]he non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts." *Tucker v. Banknorth, NA,* 333 F. Supp.2d 50, 55-56 (E.D.N.Y. 2004) (Spatt, J.) (citing *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990)).

## IV.   Law and Argument.

### A.   Bank Lacks Standing Because a Telephone Line Used for Business Purposes and Held Out to the Public as a Business Number is Not "Residential" under the TCPA.

#### 1.   Introduction.

Bank's Complaint is based on a prerecorded telephone call to the Telephone Number that Bank alleges violated Section 227(b)(1)(B) of the TCPA, a provision that only protects Residential Telephone Lines. Because Bank uses the Telephone Number to conduct Bank's law practice business, and because Bank admittedly holds out the Telephone Number to the public as Bank's business telephone line in a variety of ways—Bank lacks standing under the TCPA.

#### 2.   The TCPA Does Not Prohibit Prerecorded Telephone Calls to Business Telephone Lines.

The TCPA makes it unlawful "to initiate any telephone call to any **residential telephone line** using an artificial or prerecorded voice to deliver a message . . . ." 47 U.S.C. § 227(b)(1)(B) (emphasis added). As the district court observed in *Bank v. Independence Energy*, "neither the statute nor the enacting regulations provide a definition" of a "residential telephone line." See, *Bank v. Independence Energy Group LLC*, 12-cv-01369, 2015 WL 4488070 (E.D.N.Y. July 23, 2015), attached as Ex. O, to C.Tackett Decl.; 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(2). In the absence of a statutory definition for a term, one must look to the plain meaning of the statute's words. *See In re Caldor Corp.*, 303 F.3d 161, 168 (2d Cir.2002) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.") *Id.* quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).

When the plain language of a statute does not clearly express Congressional intent, a court should interpret the provision looking towards Congress's general purpose in

enacting the legislation. See *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, **1237 (2d Cir. 1992)** ("[I]n all matters of statutory interpretation, we are ultimately looking for the intent of congress * * *.") (citation omitted). Protecting residential telephone lines is the main focus and the motivating reason behind the TCPA. *See Mims v. Arrow Fin. Servs., LLC,* 132 S.Ct. 740, 745 (2012). Indeed, in *Mims,* the United States Supreme Court observed that the TCPA was passed because: "[m]any consumers [were] outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." **In fact, throughout the TCPA, the statute distinguishes Residential Telephone Lines from business telephone lines, which receive** considerably less protection. The express language of §227(b)(1)(B) of the TCPA does not prohibit artificial or prerecorded calls to telephone lines for businesses or home businesses. 47 U.S.C. §227(b)(1)(B). The plain **meaning of the phrase Residential Telephone Line** in §227(b)(1)(B), therefore, denotes a private telephone line that is not held out to the public as a business line and not used for purposes of operating a business.

In *Independence Energy*, this Court specifically noted that the FCC refused to extend protections against prerecorded calls to business telephone numbers. *Independence Energy,* at *2 citing 47 U.S.C. § 227(b)(2)(A). Specifically, this Court noted that Congress had directed the FCC to "consider prescribing regulations to allow businesses to avoid receiving calls made using an artificial or prerecorded voice to which they have not given their prior express consent." *Id.* The FCC, however, refused to extend any further protections to businesses. *Id.* (citing *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8756 n.7 (Oct. 16, 1992) ("we are not persuaded that additional prohibitions on prerecorded voice message calls to businesses are necessary

at this time."). Thus, straightforward legislative history supports that the TCPA protection should not be extended to business telephone lines.

Furthermore, courts have noted in numerous other contexts that businesses have a much lower expectation of privacy than individuals. *See, e.g., United States v. Seinfeld,* 632 F. Supp. 622, 626 (E.D.N.Y.1986) (noting, in the Fourth Amendment context, the "lesser expectation of privacy in a business as compared to a home"). Also, there is further evidence in the legislative history that Congress intentionally refrained from imposing similar limits on business-to-business calls, because of businesses' lessened expectation of privacy. *See* 137 Cong.Rec. S16204-01 (Nov. 7, 1991) (statement of Sen. Hollings). Specifically, Senator Hollings indicated that it would be improper to extend the TCPA to business telephone lines:

> The Supreme Court has generally recognized that persons at work do not have the same level of privacy protection as afforded to persons in their homes. Thus the legality of a ban on unwanted computerized telephone calls to the workplace is uncertain.

*Id.* As Judge Gleeson concluded in *Independence Energy*, "by holding out their telephone numbers as business lines, individuals like Bank forgo the expectation of privacy that the TCPA was enacted to protect." *Indep. Energy*, 2014 WL 4954618, *2.

Here, Bank does not contest that Bank used the Telephone Number as his business telephone line. In fact, Bank readily admitted this fact in response to Allegiance's requests for admissions. *See, e.g.,* C.Tackett Decl., Ex. C, Response No. 14. Bank provided several other concrete admissions that each establish that Bank publicly held out the Telephone Number as his business number, stating as follows:

> **Request No. 1:** Admit that You[4] have previously listed the Phone Line[5] under your contact information in pleadings and court filings filed in lawsuits in which You were a party or counsel.

---

[4] In Allegiance's Requests for Admissions, You was defined to mean Plaintiff Todd Bank.

00352577.1

**[Bank's] Response to Request No. 1:** Admitted.

**Request No. 2:** Admit that You have previously listed the Phone Line on business cards for your professional services as an attorney.

**[Bank's] Response to Request No. 2:** Admitted. * * *

**Request No. 4:** Admit that You have listed the Phone Line as your contact information on the letterhead for professional correspondence regarding your legal services, including regarding pending or prospective litigation matters.

**[Bank's] Response to Request No. 4:** Admitted.  * * *

**Request No. 6:** Admit that You have deducted some portion of the costs related maintaining the Phone Line as a business expense in filing your income tax returns filed with the Internal Revenue Service related to tax years 2012 through 2015.

**[Bank's] Response to Request No. 6:** Admitted.

**Request No. 7:** Admit that You have listed the Phone Line on your attorney registration form with the New York State Unified Court System.

**[Bank's] Response to Request No. 7:** Admitted.

**Request No. 8:** Admit that the Phone Line is listed as your business contact information in at least one attorney directory.

**[Bank's] Response to Request No. 8:** Admitted.        * * *

**Request No. 11:** Admit that You publicly list the Phone Line as your attorney contact information on your website, which advertises your professional services, www.toddbanklaw.com.

**Response to Request No. :** Admitted.

*See,* C.Tackett Decl., Ex. C Bank's Admissions. Each of Bank's above admissions have the

effect of a final judicial determination as to each of Bank's admitted facts regarding his

commercial use of the Telephone Number. *See, e.g., Vincent v. C.O.M. House,* No.

---

[5] The defined term Phone Line in Allegiance's Request for Admissions, refers to the same Telephone Number defined in this brief, which is at issue in Bank's claims, being (718) 520-7125.

07CV632A, 2009 U.S. Dist. LEXIS 80776, 8 (W.D.N.Y. Sept. 4, 2009)(an admission, "goes beyond being mere evidence," an admission "is conclusive of the matter and avoids the need for proof [of that matter] at trial."). Further, as detailed in the above factual summary, Bank's production of documents corresponds with Bank's admissions, and demonstrates that Bank held the Telephone Number to the public as a business telephone number:

(i)  *See, e.g,* Decl., Ex. I, Bank's website (Phone Number publicly listed as the contact information for Bank's law practice);

(ii)  Ex. N, Bank's N.Y. Bar registration (Phone Number again listed as the contact for Bank's law practice);

(iii)  Ex. M, Bank's attorney listing on Junfax.org (same);

(iv)  see also (Dkt.1, p.12), (Phone Number publicly listed on the Complaint as the contact information for Bank's law practice).

Moreover, the fact that Bank claimed the Telephone Number on his tax returns as a business deduction alone should establish Bank's lack of standing under the TCPA. *See, Decl.*, Ex. J, excerpts from Bank's tax returns containing deductions that Bank admitted were for use of the Telephone Number. Bank should not be permitted to represent to the federal government that his telephone is used for business purposes, then receive the benefit of a tax deduction as a result, and later argue that the Telephone Number is used for residential purposes to claim Bank has standing under the TCPA.

Therefore, there can be no question that Bank's Telephone Number is used for business purposes and held out to the general public as a business line, and should not be considered "residential" under the TCPA. As this court correctly concluded in the *Independence Energy* matter "no reasonable juror could find the Subject Telephone [Number] is residential." See Ex. O, *Independence Energy,* at *2.

00352577.1

### 3. Bank's Suggested Bright-Line Rule for Determining the Residential Nature of a Telephone Line Would be Contrary to Congressional Intent and Impractical to Implement.

#### a. Introduction.

Bank has argued that this Court should adopt a bright-line rule that any telephone line registered as "residential" with the local telephone company is a "residential telephone line" under Section 227(b)(1)(B), regardless of how the telephone line is actually used. See, Relevance Letters (Dkt. 67, 68). And, as explained in greater detail below: (i) Bank's proposed bright-line rule would run contrary to Congress's intent in enacting Section 227(b)(1)(B) of the TCPA; (ii) Bank's rule would be impractical to apply; and, (iii) most importantly, Bank's proposed rule is not supported by the TCPA, or the case law interpreting the TCPA.

#### b. Congress Intended to Protect Consumers when Congress Enacted the TCPA.

The Telephone Consumer Protection Act is a statute that was specifically designed for the purpose of protecting consumers. Congress enacted the TCPA in response to consumer complaints about unsolicited, automated telemarketing calls to the home. S. Rep. No. 102-178, at 1-2 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968. As the FCC observed in 1992, most people "do not raise privacy concerns with respect to prerecorded calls to businesses." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8756 n.7. To interpret the TCPA as Bank urges would distort Congress's purpose and construe the word "consumer" out of the TCPA.

Further, as Judge Gleeson noted, Congress directed the FCC to "consider prescribing regulations to allow businesses to avoid receiving calls made using an artificial or prerecorded voice to which they have not given their prior express consent." *Indep. Energy*, 2014 WL 4954618, *3 (citing 47 U.S.C. § 227(b)(2)(A)). The FCC, however, refused to extend

any further protections to businesses. *Id.* (citing *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8756 n.7 (Oct. 16, 1992) ("**1992 TCPA Order**"). In the 1992 TCPA Order, the FCC specifically stated that "[b]ased on the record and on the scope of the prohibitions on autodialers and prerecorded messages in the rules we adopt today, we are not persuaded that additional prohibitions on prerecorded voice message calls to businesses are necessary at this time.").

### c. No Legal Precedent Supports Bank's Attempt to Rewrite the TCPA.

The sole case that Bank relies upon to support Bank's proposed bright-line rule is an unpublished Missouri state trial court decision, *Margulis v. Fairfield Resorts, Inc.*, No. 03AC-008703, 2004 WL 5400462 (Mo. Cir. Ct., Aug. 3, 2004). (Dkt. 39, p. 20), Bank's Opp. citing *Margulis*. The *Margulis* court ruled on a motion to compel discovery responses, in part, by borrowing a definition of "residential subscriber" from Missouri's "NoCall law" and applying that definition to the TCPA, which does not define the similar term. *Id.* Leaving aside the absence of any binding precedent, this state trial court's attempt to guess the meaning of federal law from its own state law is not even persuasive.

In rejecting the suggestion that the word "residential subscriber" referred to a person's "primary residential telephone service," *Margulis* relied on the definition of a residential subscriber in Missouri Revised Statutes §407.1095, which it quoted as: "a person who has subscribed to residential telephone service from a local exchange company or the other persons living or residing with such person." *Margulis*, 2004 WL 5400462. That definition was, however, later amended by the Missouri legislature. Today, the Missouri statutory definition reads: "a person who, *for primarily personal and familial use*, has subscribed to residential telephone service, wireless service or similar service, or the other persons living or residing with such person." Mo. Rev. Stat. 407.1095(2) (emphasis added).

The definition is now narrower in the sense that it defines a "residential subscriber" as one whose telephone service is for "**primarily personal and familial use**." Thus, the definition in Missouri law now supports the very distinction that the *Margulis* court rejected, *i.e.*, that the word "residential" means a line that is used for traditional "consumer" purposes, not business purposes.

### 4. Home Business Telephone Lines Are Not Included in the Meaning of "Residential Telephone Line" under the TCPA, so it Was Not Necessary to Exclude Home Business Lines.

Moreover, the FCC has explicitly declined to adopt a bright-line rule of the sort that Bank urges upon this Court. *See 2005 Rule*, 70 Fed.Reg. at 19, 331. In declining to create an exemption from the Do-Not-Call provisions of the TCPA for calls to "home-based businesses," while recognizing that the Do-Not-Call provisions of the law were not meant to affect telephone calls to businesses, the FCC decided that questions about whether a call to a "home-based business" violated those provisions should be evaluated "as they are brought to [the Government's] attention to determine whether or not the call was made to a residential subscriber." *Id.* Significantly, the FCC's description assumes that a telephone number may be placed on the Do-Not-Call Registry by a "home-based business" and nonetheless be ineligible to appear on the registry.

### B. Allegiance's Intent is Irrelevant to Determining Whether Bank's Telephone Line is Residential under the TCPA.

Bank's prior suggestion and likely argument here—that Allegiance should be required to prove how the caller obtained the Telephone Number—is unsupported by the TCPA and contradicts Bank's clear admissions that Bank's Telephone Number was his business line. Bank has suggested that the Court should apply a new subjective test that is based on whether the caller knew that they were calling Bank's business line. See, Relevance Letters, (Dkt. 67). The TCPA provides no basis for Bank's argument. The TCPA

makes it unlawful to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice." No reference to the caller's intent is included in Section 227(b)(1)(B), neither as an element of a violation, nor as a defense. Conversely, whether the telephone number called in a TCPA case is a Residential Telephone Line is plainly an element of Bank's claim. Here, there is significant evidence to demonstrate as a matter of law that the Telephone Number was not "residential."

Bank's argument is flawed as a matter of public policy as well. The type of subjective test that Bank attempts to impose is not provided for under the TCPA, and is a wholly improper attempt to expand the scope of a strict liability statute like the TCPA. This burden shift would allow Bank and others to hold out their telephone numbers to the public as business numbers, while purchasing residential telephone services, and then demanding damages whenever a business could not prove the business intended call Bank's law practice and not Bank's home. Allowing professional TCPA claimants to game the system and force a burden shift onto businesses would distort the consumer protection purpose of the TCPA. As indicated above, Congress enacted the TCPA to protect consumer's—not to protect the cottage industry of Bank and others acting as professional TCPA plaintiffs.

Further, by Bank's own admission the telephone company does not ask or check whether a subscriber uses a telephone line for business, which demonstrates exactly why Bank's proposed test is unworkable. Specifically, Bank admitted the following:

> **Request No. 15:** Admit that your telephone service provider for the Phone Line does not require You to certify that You will not use the Phone Line for business purposes.

> **Response to Request No. 15:** Admitted.

*See*, Exhibit C. The fact is that subscribing to what the telephone company labels a residential line has no bearing on whether the telephone line is residential under the

00352577.1

TCPA. A telephone plan marketed as being residential is simply one of the products that a telephone service provider offers, generally at a somewhat lower price. Any operating business may make the valid business choice to purchase a lower-priced telephone line, which the telephone service provider may or may not market as being the provider's residential option.

### C. The Court Lacks Continuing Jurisdiction over Bank's State Law Claim.

The Court need not address Plaintiff's GBL § 399-p claims, since Plaintiff's TCPA claim fails as a matter of law. In fact, 28 U.S.C. § 1367(c) gives district courts discretion to "decline to exercise supplemental jurisdiction over a claim," if "the district court has dismissed all claims over which it has original jurisdiction." In this instance, the TCPA requires summary judgment on Bank's sole claim with original federal jurisdiction, leaving only Bank's state law claim, over which this Court does not have original jurisdiction. As a result, the Court should decline to exercise supplemental jurisdiction over Plaintiff's New York state law claim, asserted under GBL §399-p. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) (holding that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988); *West v. Moe's Franchisor, LLC,* No. 15-2846, 2015 WL 8484567, at *4 (S.D.N.Y. Dec. 9, 2015) ("'It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.'") (quoting *Klein & Co. Futures, Inc. v. Bd. of Trade,* 464 F. 3d 255, 262 (2d Cir. 2006)). *See also, e.g., Kolari v. New York-Presbyterian Hospital,* 455 F.3d 118 (2nd Cir. 2006).

In *Kolari*, the Second Circuit found that it was an abuse of discretion for the district court to retain jurisdiction over a state law claim, following disposition of all the court's original jurisdiction claims. *Id.* at 124. The *Kolari* case involved uninsured patients who brought a putative class action against private non-profit hospitals, alleging that the hospitals charged discriminatory rates that were higher for uninsured patients than rates for patients who had either private health insurance, Medicare, or Medicaid. *Id.* at 119. In *Kolari*, the district court dismissed the federal claims at issue, but the court continued to exercise supplemental jurisdiction over the plaintiffs' state law claims. The defendants appealed the district court's decision to continue exercising supplemental jurisdiction over the plaintiffs' state law claims. *Id.* On appeal, the Second Circuit ruled that the district court's exercise of supplemental jurisdiction over state law claims was not justified after dismissal of all federal claims, finding that the district court failed to adequately identify a federal interest, and no other factors warranted supplemental jurisdiction. *Id.* at 123-124.

Plaintiff Bank contends that the Class Action Fairness Act ("**CAFA**"), 28 U.S.C. §1332(d)(2), gives the Court independent subject-matter jurisdiction to retain Bank's GBL §399-p claim. (Dkt. 39, Bank Opp., *25-26.). Plaintiff Bank concedes, however, that if Bank's state law claim cannot be maintained as a class action, Bank's suit fails to satisfy CAFA's requirements. *Id.* at *26 (citing *Bank v. Uber Techs., Inc.*, No. 15-4858, Order Denying Mot. for Reconsideration (E.D.N.Y. Mar. 8, 2016). Here, Bank's state law claim cannot rely on CAFA for jurisdiction because GBL §399-p expressly prohibits the use of class actions, and thus Bank cannot rely on CAFA to retain federal jurisdiction over this claim. Also, Bank's Complaint contains no allegations that the state law claim independently satisfies CAFA's $5,000,000 amount-in-controversy requirement. See, (Dkt.

1, ¶8); 28 U.S.C. § 1332(d)(2).  Consequently, the Court should dismiss Bank's claim under GBL §399-p, based on lack of any continued basis for supplemental jurisdiction.

### D. Policy Considerations Counsel Against Bank's Proposed Attempt to Rewrite the TCPA, and Courts have Ruled that Professional TCPA Claimants, Such as Bank, Do Not Suffer a Harm Necessary for Standing under the TCPA.

In addition to being outside the terms of the TCPA, Bank's bright-line rule to rewrite the TCPA is also plainly self-serving for Bank. If the Court were to give effect to Bank's proposed new version of the TCPA, businesses that set up one or more lines with a telephone company's residential services could easily ambush other businesses into violating Bank's proposed rewrite of the TCPA's Section 227(b)(1)(B). Enabling a scheme that allows for those setups would defy the purpose and intent behind the TCPA.

As the U.S. Supreme Court held in *Spokeo, Inc. v. Robins*, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." 136 S.Ct. 1540, 1549 (2016), *as revised* (May 24, 2016). Further, Courts have ruled that individuals like Bank, acting as professional TCPA plaintiffs, do not suffer a particularized harm necessary for standing under the TCPA. *See, e.g., Primavera v. Drexen*, No. 080922890, 2009 WL 3554582 (Utah Dist.Ct. Oct. 26, 2009) citing *Adamo v. AT&T*, 2001 WL 1382757, at *2 (Ohio App. 8th Dist. 2001) ("The TCPA does not extend to business customers."). In *Drexen*, the court considered the meaning of "residential" under the TCPA, and found that an attorney who systematically brings TCPA claims to generate income cannot represent his telephone line as "residential" because "the telephone line is a mere instrumentality of Plaintiff's business of purs[uing] TCPA claims." *Drexen*, at *8. See, *also Stoops v. Wells Fargo Bank, N.A.*, 15-83, 2016 WL 3566266, at *9 (W.D.P.A. June 24, 2016)

00352577.1

(dismissing TCPA claims under *Spokeo*[6] for plaintiff's failure to plead any injury beyond a mere statutory violation).

The court in *Stoops* granted summary judgment to the defendants because the calls to the professional TCPA plaintiff "did not constitute 'the nuisance, invasion of privacy, cost, and inconvenience' from which Congress intended to protect consumers." *Id.*, at *11. In this instance, one need look no further than Plaintiff's website for his TCPA law practice to conclude that Plaintiff makes his living off of filing TCPA lawsuits, and is no different than the plaintiff in *Stoops* who "file[d] TCPA actions as a business." *Id.* at *9; Decl., Ex. J, www.toddbanklaw.com.

Bank has pursued the type of professional TCPA claimant career plan, that the courts in *Stoops* and *Drexen* said prevented standing and proved a line was not residential.[7] *See, id.* Bank's pro se TCPA claim here does not present a claim by the type of average consumer that the statute was designed to protect. To the contrary, Bank files TCPA claims professionally, as the main focus area of Bank's law practice. In fact, Bank holds himself out on his website as specializing in bringing TCPA claims, as Bank states the following:

---

[7] Bank has filed numerous TCPA lawsuits in recent years based on prerecorded messages. *See, e.g., Weitzner v. Iridex Corp.*, 2006 WL 1851441 (June 29, 2006); *Bonime v. Avaya, Inc.*, 2006 WL 3751219 (Dec. 20, 2006); *Holster v. Gatco, Inc.*, 485 F.Supp.2d 179 (E.D.N.Y.2007); *Ari Weitzner, M.D., P.C. v. Sciton, Inc.*, 2007 WL 2891521 (Sept. 28, 2007)(dismissed for lack of subject matter jurisdiction); *Leyse v. Clear Channel Broadcasting, Inc.*, 301 Fed.Appx. 20 (2d Cir.2008); *Holster v. BNA Subsidiaries, LLC*, 2010 WL 902699, *1 (Mar. 9, 2010); *aff'd*, 547 F.3d 497 (2d Cir.2008) (dismissed for lack of jurisdiction); *Gratt v. Etour & Travel, Inc.*, 347 Fed.Appx. 707 (2d Cir.2009); *Giovanniello v. ALM Media, LLC*, 2010 WL 3528649 (Sept. 3, 2010), *aff'd*, 660 F.3d 587 (2d Cir.2011), *cert. granted, judgment vacated*, 133 S.Ct. 159, 184 L.Ed.2d 1 (2012), and *aff'd*, 726 F.3d 106 (2d Cir.2013), aff'd, 618 F.3d 214 (2d Cir.2010); *Weitzner v. Sanofi Pasteur, Inc.*, 7 F.Supp.3d 460 (M.D.Pa.2014), *aff'd*, 819 F.3d 61 (3d Cir.2016); *Weitzner v. Cynosure, Inc.*, 2014 WL 508237 (Feb. 6, 2014); *Bank v. Caribbean Cruise Lines, LLC*, No. 12 Civ. 05572 (E.D.N.Y. Nov. 24, 2014) (dismissed based on unaccepted offer of judgment), aff'd, 606 Fed. Appx. 30 (2d Cir. 2015); *McCabe v. Caribbean Cruise Line, Inc.*, 2014 WL 3014874 (July 3, 2014); *Bank v. Alliance Health Networks, LLC*, No. 15 Civ. 00213 (E.D.N.Y. Oct. 10, 2015) (same); *Bank v. Corps. for Character, L.C.*, No. 14 Civ. 04795 (E.D.N.Y.) (dismissed based on agreement between the parties); *Bank v. Spark Energy Holdings*, LLC, No. 13 Civ. 06130 (E.D.N.Y.) (same); *Bank v. Philips Electronics North America Corp.*, No. 14 Civ. 05312 (E.D.N.Y.) (dismissed for failure to state a claim); *Bank v. J. D. W. & Assocs., LLC,* No. 15 Civ. 01835 (E.D.N.Y.) (dismissed without prejudice); *Bank v. Lifewatch Inc.*, No. 15- Civ. 02278 (E.D.N.Y.); *Bank v. Uber Techs., Inc.*, No. 15 Civ. 04858 (E.D.N.Y.) (same). *Leyse v. Lifetime Entertainment Services, LLC*, 171 F.Supp.3d 153 (S.D.N.Y.2016), *aff'd*, 2017 WL 659894 (Feb. 15, 2017).

> **I represent plaintiffs in class actions that deal with what I call**
> **"annoyance" law,** which encompasses various types of cases, **including:**
>
> · **pre-recorded telephone calls** (commonly referred to as "robocalls") **that**
> **violate the federal Telephone Consumer Protection Act * * ***

See, C.Tackett Decl., Ex. J, http://www.toddbanklaw.com/, (last accessed 4/10/17) (emphasis

added). And, as is clear from Footnote four above, **Bank has not merely filed one or two**

TCPA claims. Instead, Bank has operated as a prolific filer of TCPA claims, and held

himself out as a lawyer that specifically handles TCPA class actions. Although Bank has

not filed pro se in all of the cases in Footnote four, **Bank has filed many pro se cases under**

**the TCPA, including each of the referenced cases where Bank is one of the named parties.**

And, in each instance where Bank acts pro se, **Bank's history of filing countless TCPA**

claims cannot be ignored in determining whether Bank suffers an injury sufficient to

convey standing. Because, make no doubt about it, Mr. Bank is an individual acting as a

professional TCPA plaintiff. Thus—in addition to the law indicating that Bank lacks

standing to raise a TCPA claim for a prerecorded call to his business line—Bank also lacks

standing because, for Bank, the call in question was not a particularized harm conveying

standing. Indeed, for Bank, receiving a prerecorded call was a fortuitous business

opportunity that gave Bank his next case.

## V.   Conclusion.

As a result of the above uncontested facts, Bank's Telephone Number is not a

Residential Telephone Line under the TCPA. This Court should rule that Bank's Telephone

Number is not "residential" under the TCPA because the Telephone Number is not a

Residential Telephone Line. The Telephone Number is a business line, used to conduct

Bank's law practice, and the Telephone Number is undisputedly held out to the public as

being Bank's business telephone line. Bank holds his Telephone Number out to the public

in numerous ways as a business telephone number for Bank's law practice, including on

00352577.1

Bank's letterhead, on Bank's business cards, on Bank's attorney registration with the State of New York, on Bank's website, on third-party attorney directories—and even on the Complaint that Bank filed to initiate this case.

Moreover, this very Court ruled in *Bank v. Independence Energy* that Bank's Telephone Number is not a Residential Telephone Line under the TCPA because Bank has publicly held out the Telephone Number as Bank's business number. In fact, it was improper for Bank to even file the Complaint in light of this Court's directly on point and dispositive ruling that the Telephone Number is not a Residential Telephone Line under the TCPA. Because Bank's telephone line is held out to the public as a business telephone line, Bank has no standing to bring the claims in the Complaint under the TCPA's rules against prerecorded telephone calls being made to Residential Telephone Lines. Thus, the statutory framework under the TCPA and applicable Second Circuit case law require that Summary Judgment be granted in Allegiance's favor on Bank's TCPA claim.

Further, the required summary judgment on Bank's TCPA claim will result in no remaining basis for the Court to retain supplemental jurisdiction of Bank's improper state law claim, which must therefore be dismissed for lack of jurisdiction.

**DATED**:  April 17, 2017

Respectfully submitted,

Christopher W. Tackett (OH Bar. #0087776)*(admitted PHV)*
**Nardone Limited**
300 East Broad Street, Suite 490
Columbus, Ohio 43215
Telephone: (614) 223-0123
Fax: (614) 223-0115
Email: ctackett@nardonelimited.com

*Counsel for Defendants*
Allegiance Administrators, LLC and
National Administrative Solutions Corp.

Page **24** of **25**

00352577.1

**Certificate of Service**

I certify that a true and correct copy of the foregoing, **Defendants' Motion for Summary Judgment** was served via United States Mail today, April 17, 2017, on counsel for parties of record, as listed below.

By: _____

Christopher W. Tackett  (OH Bar. #0087776)

Todd C. Bank
Tblaw101@aol.com
tbank@toddbanklaw.com
119-40 Union Turnpike, 4th Floor
Kew Gardens, New York 11415

00352577.1